MICHAEL G. BAILEY
United States Attorney
District of Arizona
JASMINE N. LITTLE
Special Assistant United States Attorney
Fort Huachuca, AZ 85613-7025
Email : jasmine.n.little.mil@mail.mil
Phone: (520) 533-0580
Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | Case No: 4:CR18-00722 (BGM) |
| Plaintiff, | |
| vs. | **RESPONSE TO MOTION TO DISMISS PURSUANT TO RULE 12** |
| James A. Springer, | |
| Defendant. | |

COMES NOW, the Plaintiff, by and through its attorneys, Michael Bailey, United States Attorney for the District of Arizona, and Jasmine Little, Special Assistant United States Attorney, and hereby respectfully requests that this Court deny Defendant's Motion to Dismiss Pursuant to Rule 12 for the reasons set forth in the Memorandum of Points and Authorities.

**RESPECTFULLY SUBMITTED** this 1st day of August, 2019.

MICHAEL G. BAILEY
United States Attorney

*/s/Jasmine Little*
JASMINE LITTLE
Special Assistant United States Attorney

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Facts:

All information set forth herein is derived from the Military Police Report of Investigation and the audiovisual recording of the incident, all of which have been previously provided to the Defendant.

On March 20, 2018 at around 4:20pm, the Defendant, Mr. James Springer, unlawfully entered Fort Huachuca, a federal military installation within the jurisdiction of the United States located in the District of Arizona, to video record a defense installation. Mr. Springer video recorded Fort Huachuca and broadcast the video recording on YouTube, a web-based video platform. Mr. Springer willfully failed or refused to comply with the lawful orders of Officer William J. Fisher, a police officer invested by law with authority to direct, control, or regulate traffic control. *See* Document 6, Information.

The factual basis set forth in the Defendant's motion fails to address a key fact as to the stop and arrest of the Defendant, Mr. James Springer. While the Defendant was outside of the Buffalo Soldier entrance gate access control point and filming the base, he was not outside the boundaries of the base. Officer Louis Vanderbeek states, as found on page 2 of Defense's Exhibit 3, that the Defendant "was inside of the Fort Huachuca area by approximately five feet." Thus, while physically inside the boundaries of Fort Huachuca, the Defendant did enter military property in violation of 18 U.S.C. § 1382. In addition, Mr. Springer is charged with one count of photographing a defense installation in violation of 18 U.S.C. § 795; one count of publication and sale of photographs of defense installations in violation of 18 U.S.C. § 797; and one count of failure to comply with a police officer in violation of Ariz. Rev. Stat. § 28-622.

**II. Motion to Dismiss Pursuant to Fed R. Crim. P 12(b)(2), (3)(A) & (B) Should be Denied.**

Defense's Motion to Dismiss Pursuant to Rule 12 (hereinafter "Defense's Motion") asserts that the Defendant's filming of Fort Huachuca is constitutionally protected under an as-applied challenge to the overbreadth doctrine. Defense's Motion claims that 18 U.S.C. § 795, as it was applied to Mr. Springer, was unconstitutional, as it was enforced against protected activity. However, Mr. Springer's activity was not protected.

The First Amendment protects several forms of speech. Symbolic speech includes conduct that "can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). The Supreme Court in *Texas v. Johnson* held that conduct such as burning an American flag is a form of symbolic speech that is protected. 491 U.S. 397 (1989).

Here, the Defendant's act of filming Fort Huachuca is symbolic speech that is *not* protected under the First Amendment. This Response Motion asserts that Fort Huachuca is a vital military installation that requires its information to be protected. It will also assert that the Defendant did record the installation, that he entered Fort Huachuca, and that Fort Huachuca is a nonpublic forum. It will further assert that the Defendant's right to video record Fort Huachuca, a nonpublic forum, is outweighed by the installation's operational mission to engage in the national security and intelligence interests of the Department of Defense.

**III. Law:**
    **A. Fort Huachuca is a Vital Installation.**

18 U.S.C. § 795 states that it is unlawful to "make any photograph, sketch, picture," of "certain vital…installations." 18 USC § 795 (2019). In Executive Order 10104, President Harry S. Truman defines "vital military installations" as:

> All military…or air-force installations and equipment which are now classified, designated, or marked under the authority or at the direction of the President, the

Secretary of Defense, the Secretary of the Army…or the Secretary of the Air Force as "top secret," "secret," "confidential," or "restricted," and all military…or air-force installations and equipment which may hereafter be so classified, designated, or marked with the approval or at the direction of the President, and located within:
(a) Any military…or air-force reservation, post, arsenal, proving ground, range, mine field, camp, base, airfield, fort, yard, station, district, or area.

Exec. Order No. 10104, 15 F.R. 597 (1950).

Fort Huachuca is a vital military installation. Located inside it are the headquarters of the United States Network Enterprise and Technology Command, United States Army Electronic Proving Ground, and the United States Joint Interoperability Test Command. Each of these commands is responsible for top secret, secret, classified, and sensitive information and equipment on Fort Huachuca, to include unmanned aerial vehicles and military intelligence testing equipment. As well, the personnel who traffic through Fort Huachuca's access control points include foreign nationals, Department of Defense civilians, military members, and Department of the Army contractors, whose identities must be protected in accordance with operational security. Thus, Fort Huachuca is a vital military installation.

### B. The Defendant Recorded the Installation in Violation of 18 U.S.C. § 795.

18 U.S.C. § 795 prohibits persons from making any "photograph, sketch, picture" of vital military installations. 18 USC § 795 (2019). The statute does not require one to physically enter the installation to violate the statute.

The Defendant asserts that he was merely recording the entrance to Fort Huachuca, which does not constitute filming of the installation. However, according to eyewitness testimony the Defendant was standing "inside the Fort Huachuca area by approximately five feet," filming in the direction of the access control point, which is well inside the boundaries of Fort Huachuca. *See* Defense's Exhibit 3.

Although physical entry onto the installation is not required to violate 18 U.S.C. § 795, here, Defendant was filming while standing inside Fort Huachuca's boundaries. Defense's Exhibit 1 includes a yellow line to delineate the boundary of the installation. Property to the east of this line is not inside the boundaries of the installation, while all property to its west is part of the installation. Defendant, as stated in Officer Vanderbeek's sworn statement, was standing "inside of the Fort Huachuca area by approximately five feet" while filming. *See* Defense's Exhibit 3. Thus, Defendant stood near the corner of Fry Boulevard and Buffalo Soldier Trail, west of the yellow line, and thus squarely inside Fort Huachuca's boundaries. The access control point he filmed is located approximately 500 feet (0.1 miles) west of the yellow line. *See* Government's Exhibit 3 (indicating approximate distance between the yellow line of Fort Huachuca's boundary and the access control point). The access control point is well inside Fort Huachuca's boundaries, and thus constitutes "the installation." Thus, Defendant filmed the installation.

Additionally, the access control point Defendant filmed includes several military personnel who perform specific duties relating to the United States' protection. The gate guards posted at the Buffalo Soldier access control point are Military or Civilian Police Officers with exclusive jurisdiction to enforce the law within Fort Huachuca. In fact, the police officers assigned to control entry through this gate have a specific duty to ensure security and safety by screening those seeking to gain entry to the installation. This directly relates to the protection of the United States, as Fort Huachuca is a federal land of the United States.

Further, Defense's Motion asserts that he "clearly had no view of anything needing to be protected from the public" while he was video recording. *See* Defense's Motion at p. 7. However, the Defendant's *subjective view* of content to be protected from the public is not at issue here; rather it is the *video recording* of potentially classified information. This information

can include but is not limited to: personally identifiable information of persons gaining entry (such as identification cards and credentials, and the faces and likeness of those persons), government vehicle license plates, and the identities of foreign nationals. While the Defendant may not have personally viewed this information, his video recording potentially captured this information. Officer Fisher states, "I moved the best I could to block the [Defendant's] cameras view of the Access Control Point." *See* Government's Exhibit 2. The unlawful capture of this information is in direct violation of Fort Huachuca's security, and of 18 U.S.C. § 795.

### C. Simple Intent to Enter Sufficiently Proves the Defendant Violated 18 U.S.C. § 1382.

The Defendant entered Fort Huachuca on the sidewalk on the northwest corner of the intersection of Fry Blvd and Buffalo Soldier Trail, inside five feet of the boundary. Under the first paragraph of 18 U.S.C. § 1382, a person who enters any military reservation or installation for any purpose prohibited by law has violated the federal statute. Under this law, the military base need not be a "vital" installation as required under 18 U.S.C. § 795, but merely "any military…installation." 18 U.S.C. § 1382 (2019).

The Department of Justice Criminal Resource Manual states that "[i]n order to violate the first paragraph [of 18 U.S.C. § 1382]…an individual must enter for some 'purpose prohibited by law or lawful regulation.'" Protection of Government Property—Military Bases, Department of Justice Criminal Resource Manual, https://www.justice.gov/jm/criminal-resource-manual-1634-protection-government-property-military-bases (last visited July 29, 2019). While this is a specific intent crime, the Manual notes, however, "that in military installations where the public is forbidden entry by law or regulations, the *simple intent to enter* will be sufficient to trigger this section." *Id*. (emphasis added).

Here, Fort Huachuca is a military installation where the public is forbidden entry by its regulations. Non-military affiliated visitors wanting to gain access "who do not have a DoD [Department of Defense] identification card, will be subject to a background check before being allowed entry to the installation." U.S. Army Fort Huachuca, https://home.army.mil/huachuca/index.php/about/visitor-information (last modified November 19, 2018, 2:31 PM). Thus, the Defendant's simple intent to enter Fort Huachuca sufficiently triggers a violation of 18 U.S.C. § 1382.

Defendant's intent to enter is derived from his intent to film the installation. He was well-established five feet inside of the Fort Huachuca boundary to execute the filming. Because he was set up at that location with a Go-Pro style camera and his cell phone, likely standing there for some amount of time before Officer Fisher apprehended him, he intended to be where he was located. Since where he was located was inside the bounds of Fort Huachuca, he intended to enter, which satisfies the simple intent needed to demonstrate a violation of 18 U.S.C. § 1382.

### D. The Defendant Was Not on a Public Sidewalk.

Defendant argues that his activity was permissible because he was standing on "public property: a sidewalk." *See* Defense's Motion to Dismiss p. 7. First, it is important to note that not all sidewalks are public. "The Government's ownership of property does not automatically open that property to the public." *United States v. Kokinda*, (1990) (citing *United States Postal Service v. Council of Greenburgh Civic Assns.*, 453 U.S. 114, 129 (1981)).

The Defendant relies on the holding of *Flower v. United States* to demonstrate that the Government cannot prohibit the public from accessing an open street within the bounds of an installation. 407 U.S. 197, 198, 92 S. Ct. 1842, 1843, 32 L. Ed. 2d 653 (1972). However, the street at issue in *Flower*, located within the bounds of Fort Sam Houston, Texas, was "a public

thoroughfare…no different from all the other public thoroughfares in that city, and that the military had…abandoned any right to exclude civilian vehicular and pedestrian traffic from the avenue…" *Greer v. Spock*, 424 U.S. 828, 835 (1976) (citing *Flower v. United States*, 407 U.S. 197, 198, 92 S.Ct. 1842, 1843, 32 L.Ed.2d 653 (1972)).

Here, Fort Huachuca has not abandoned any right of exclusion of "civilian vehicular and pedestrian traffic" from the portion of Fry Blvd that is inside the bounds of the installation. *Id*. Civilian and Military Police actively patrol the area surrounding the Buffalo Soldier gate and its access control point. Such active patrolling is so evidenced by the fact that Officer Fisher was "dispatched to Buffalo Soldier Gate for a suspicious person [Defendant]…filming the Access Control Point." *See* Government's Exhibit 2. If Fort Huachuca had abandoned any right of exclusion as mentioned in *Flower*, Civilian or Military Police Officers would not have been dispatched to investigate the Defendant's activity. Fort Huachuca maintains special interest in all traffic inside its boundaries, including the portion of Fry Blvd.

Defense also argues that the speech restriction found to be unreasonable in *United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983), mirrors the speech restriction here. In *Grace,* the conduct at issue was the distribution of leaflets on a public sidewalk around the Supreme Court of the United States. The Supreme Court found such activity to be protected speech under the First Amendment because the Government could not restrict speech on a public sidewalk.

*Grace* is distinguishable from the instant case. The sidewalks in *Grace* were public, whereas the sidewalk at issue here is not. Defense's Motion argues that similar to *Grace*, the sidewalk on which the Defendant stood was "'indistinguishable from any other sidewalks' in the city." *See* Defense's Motion at p. 8.

- 8 -

In *United States v. Kokinda*, 497 U.S. 720 (1990), the Supreme Court found this argument unpersuasive. In that case, respondents argued—as does the Defendant here—that because the sidewalk at issue was not distinguishable from a city sidewalk, that it must be a public forum. The Court disposed of the argument, stating that "the mere physical characteristics of the property cannot dictate forum analysis." *Id*. at 727. Additionally, the Supreme Court held in *Greer v. Spock* that on Fort Dix, a military base in New Jersey, "the presence of sidewalks and streets within the base did not require a finding that it was a public forum." *Id.* at 727, (citing 424 U.S. 828, 835-37 (1976)).

Here, Fort Huachuca is a not a public forum. The installation does not allow free civilian access. Civilian visitors are "subject to a background check before being allowed entry to the installation." U.S. Army Fort Huachuca, https://home.army.mil/huachuca/index.php/about/visitor-information (last modified November 19, 2018, 2:31 PM). Indeed, the entry and exit gates, and even the areas surrounding those access points, including the location where the Defendant filmed, are actively patrolled by military officers. Thus, the mere presence of sidewalks inside Fort Huachuca's bounds, regardless of how indistinguishable they appear compared to city sidewalks, does not render the sidewalk to be a public forum. While a portion of the sidewalk falls outside of Fort Huachuca's bounds, the Defendant was standing on a portion inside five feet of the boundary. Thus he stood inside Fort Huachuca's boundaries, and as Fort Huachuca is a nonpublic forum, the portion of the sidewalk where the Defendant stood was not a public forum.

Further, the area surrounding the Supreme Court's grounds in *Grace* and the area inside Fort Huachuca's grounds have vastly distinct purposes and uses. Here, the Defendant filmed a military installation. At issue here is whether the Government can place speech restrictions on a

sidewalk inside a military installation with emphasis on protecting national security, not an area surrounding the Supreme Court or any other courthouse.

### E. The Right to Free Speech Can Be Restricted in a Nonpublic Forum.

As established in this Response Motion under III.D, the sidewalk on which the Defendant stood while video recording Fort Huachuca is not a public sidewalk. It is inside the boundaries of the installation, which is a nonpublic forum. Thus, the Defendant's right to free speech can be restricted.

Restrictions on free speech in nonpublic fora are not subject to strict scrutiny. The Government may restrict speech within a nonpublic forum as long as the restriction is "reasonable and viewpoint neutral." *Kokinda*, 497 U.S. 720, 727 (1990).

Here, the restriction on the Defendant's ability to video record Fort Huachuca is reasonable. Fort Huachuca trains personnel on military intelligence, cyber security, and human intelligence systems. Additionally, as discussed at length in III.A, Fort Huachuca is a vital military installation, home to several commands and organizations which house top-secret, secret, classified, and sensitive information and equipment inside the installation. The restriction on the Defendant's filming of the installation is reasonable to protect operational security of the installation. Photography and filming of the base thwarts this endeavor. The mission of Fort Huachuca outweighs the Defendant's interest in filming the installation. *See Morse v. Frederick*, 551 U.S. 393 (2007) (holding that a school could ban speech that encroaches upon its interest in prohibiting drug use). Thus, it is reasonable to restrict the Defendant's photography and filming on Fort Huachuca, a nonpublic forum.

### F. Defendant had Actual Notice that Filming Installations is Unlawful.

Defendant contends that all charges should be dismissed because he had no notice that his filming activity was prohibited. His whole argument rests on the misguided belief that he is relieved of culpability merely because there was no sign at the Buffalo Soldier Gate indicating that filming the installation was prohibited. But signage is not the only method of notice. Here, Officer Fisher "asked the [Defendant] over and over again to turn the camera off…which he refused to due [*sic*]." *See* Government's Exhibit 2. Therefore Defendant was given direct, verbal notice that his filming activity was prohibited. The fact that Defendant chose to ignore this direct notice and persist in filming does not save him.

A reasonable person under the circumstances would have ceased the activity at the lawful order of an officer. Here, Officer Fisher gave the Defendant verbal notice that the filming was unlawful. He failed to comply with the verbal orders of Officer Fisher, who warned him several times to cease the activity before taking him into custody. Thus, the Defendant's due process rights were not violated, as he had ample time to comply with the lawful order of the officers to cease filming the installation.

Defense's Motion further alleges that the legality principle requires the Defendant must have been given advance warning that his actions were criminal. The Defendant was given advance warning to cease filming at military installations.

Defendant's claims that he was not given notice ring especially hollow in light of the fact that he had previously been given direct notice and warning that video recording a military installation was prohibited. Eight days before he was arrested for filming at Fort Huachuca, the Defendant attempted to video record outside the gate of Davis-Monthan Air Force Base in nearby Tucson, Arizona. At 4:50pm on March 12, 2018, using the alias James Freeman, the Defendant "approached the Craycroft Gate with a Go-Pro style camera strapped to his chest and

a video recording camera, connected via cord, mounted on his cell phone." *See* Government's Exhibit 1. The military officers there expressly told Defendant he was not allowed to film on the installation and he was escorted out. *See* Government's Exhibit 1.

Defendant clearly had prior notice and knowledge that filming a military installation was prohibited. Here, the Fort Huachuca officers underscored such prohibition in the form of direct verbal warnings that filming was unauthorized and would subject him to arrest and criminal charges. Against this backdrop, Defendant's "no notice" claims utterly lack merit.

### G. **Defense's Motion to Dismiss Provides no Factual or Legal Basis for Dismissal of Charges Under 18 U.S.C. § 797 or Ariz. Rev. Stat. § 28-622.**

The Defendant is charged with four counts under the Information filed by the Government; specifically, he is charged with violations of 18 U.S.C. §§ 795, 797, 1382, and Ariz. Rev. Stat. § 28-622. However, Defense's Motion only addresses two of the four charges, namely-- 18 U.S.C. §§ 795, 1382.

As demonstrated in this Response Brief, the Defendant has provided no persuasive evidence or argument substantiating dismissal of the violations of 18 U.S.C. §§ 795, 1382. But even if he had, the case against Defendant should further be dismissed because he has offered absolutely no evidence or argument regarding the alleged violations of 18 U.S.C. § 797 or Ariz. Rev. Stat. § 28-622. 18 U.S.C. § 797 states that "whoever reproduces, sells, or gives away any photograph, sketch, picture…of the vital military installations…shall be fined under this title or imprisoned…" 18 U.S.C. § 797 (2019).

Here, the Defendant, using a Go-Pro style camera and his phone, did video record Fort Huachuca, a military installation. He further reproduced the video recording by uploading it

onto YouTube, a web-based video platform. Prior to doing so, he did not obtain prior consent from "the commanding officer of the military…post" as 18 U.S.C. § 797 requires.

Additionally, Ariz. Rev. Stat. § 28-622 states that a person "shall not wilfully fail or refuse to comply with any lawful order or direction of a police officer invested by law with authority to direct, control or regulate traffic." Ariz. Rev. Stat. § 28-622 (2018). Here, the Defendant refused to comply with the lawful orders of Officer William J. Fisher, a Civilian Police Officer invested by law with authority to control or regulate traffic, when Officer Fisher repeatedly ordered the Defendant to cease filming Fort Huachuca.

Even if the Court were to find sufficient evidence to dismiss based on the Defense's Motion, the Court should not dismiss the charges under 18 U.S.C. § 797 or Ariz. Rev. Stat. § 28-622. Defense's Motion provides no factual or legal support to demonstrate dismissal of those charges.

**IV. Conclusion**

For the foregoing reasons, the Government respectfully requests that the Defendant's Motion to Dismiss Pursuant to Rule 12 be denied. The preponderance of the evidence and relevant legal precedent support the Government's charges for the violations of 18 U.S.C. §§ 795 and 1382. And by failing to offer any evidence or argument concerning the alleged violations of 18 U.S.C. § 797 and Ariz. Rev. Stat. § 28-622, the Defendant has admitted culpability for those charges. For these reasons, all charges must be upheld and Defendant's Motion must be denied.

**RESPECTFULLY SUBMITTED** this 1st day of August, 2019.

                                                  MICHAEL G. BAILEY
                                                 United States Attorney
                                                 District of Arizona

                                                 */s/Jasmine Little*
                                                 JASMINE N. LITTLE
                                                 Special Assistant United States Attorney